UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
LEON WELLS,                             )
                                        )
            Plaintiff,                  )
                                        )
    v.                                  )   Civil Action No. 02-1357  (RBW)
                                        )
MICHAEL J. ASTRUE,                      )
Commissioner of Social Security,        )
                                        )
            Defendant.                  )
_____)

**MEMORANDUM OPINION**

Leon Wells, the plaintiff in this civil lawsuit, seeks a judgment reversing the denial of his application for social security disability insurance benefits and supplemental security income Benefits by the Social Security Administration (the "Administration").[1]  Complaint ¶ 4. Currently before the Court is the plaintiff's motion for judgment of reversal or remand and the defendant's motion for judgment of affirmance, both filed pursuant to 42 U.S.C. § 405(g).  After carefully considering the plaintiff's complaint, the administrative record, the parties' motions, and all memoranda of law and exhibits relating to those motions,[2] the Court concludes that it must grant the plaintiff's motion, deny the defendant's motion, and remand this case to the Administration with instructions for the reasons that follow.

---

[1]  The plaintiff's complaint names Jo Anne B. Barnhardt, the former Commissioner of Social Security, as the sole defendant in this case in her official capacity.  The Court has substituted the current Commissioner, Michael J. Astrue, as the defendant in place of former Commissioner Barnhardt pursuant to Federal Rule of Civil Procedure 25(d).

[2] In addition to the plaintiff's complaint and the parties' cross-motions for judgment, the Court considered the following documents in reaching its decision: (1) the Memorandum in Support of Plaintiff's Motion for Judgment of Reversal (the "Pl.'s Mem."), and (2) the Memorandum of Points and Authorities in Support of Defendant's Motion for Judgment of Affirmance and in Opposition to Plaintiff's Motion for Judgment of Reversal (the "Def.'s Mem.").

**I.   Background**

Except where otherwise noted, the following facts are part of the administrative record submitted to the Court. The plaintiff, a former letter carrier for the United States Postal Service, Administrative Record (the "A.R.") at 41, injured his back on October 12, 1991, as a result of lifting a tray of magazines while engaged in performing his job responsibilities. Id. Three years later, the plaintiff filed an application for disability insurance benefits, alleging that he had been unable to work after September 2, 1992 due to the condition of his back. Id. Specifically, the plaintiff alleged at that time that he suffered from "lumbar disc herniations . . . with an associated lumbar spinal stenosis," resulting in "chronic low back pain syndrome with bilateral lower extremity radiculopathy." Id. Based upon the evidence adduced by the plaintiff in support of his claims, he was awarded benefits for a "closed period" from September 2, 1992, until June 30, 1995, "the close of the second month following the month in which [his] disability ceased." Id. at 44.

The plaintiff's return to work proved to be short-lived, as on May 4, 1999, he filed renewed applications for disability insurance benefits and supplemental social security income benefits, alleging that the "lumbar strain" and "bad disc in his back" prevented him from working since June 2, 1997. Id. at 24. The Administration denied these claims on January 6, 2000. Id. Thereafter, the plaintiff requested a review of this decision and an evidentiary hearing before an administrative law judge ("ALJ"). Id. This request was eventually granted, and a hearing was convened on August 11, 2000, at which both the plaintiff and a vocational expert testified. Id.

At the hearing before the ALJ, the plaintiff testified that "he could sit or stand for only [five] to [ten] minutes," could only "walk [one] block," and could only "lift about [five] pounds."

Id. at 30.  He complained of moderate to severe "low back and groin pain, as well as pain down his left leg and sometimes his right leg," for which his "pain medication did not work."  Id. Consequently, the plaintiff testified that he was forced to "lie down for the pain" with a heating pad, usually "a couple of times a week for [five] to [six] hours," though "a couple of times a month [the] pain prevented him from standing up" at all.  Id.  Finally, "[i]n response to questions by his attorney, the [plaintiff] volunteered that his back problem[] 'interfered with his manhood,' result[ing] in sexual dysfunction."  Id.

At the same time, the plaintiff admitted that, despite his back condition, "he did the dishes, swept, did some dusting, vacuumed, and washed his own clothes."  Id. at 29.  He also occasionally "attended school events" for his four sons, "took them swimming" and to "an amusement park," and "went on family outings" with them.  Id.  Further, the plaintiff testified that "he was dating and [that] he had taken trips to St. Croix[] and to Atlantic City."  Id.

Based upon this testimony, the ALJ found as a factual matter that the plaintiff had exaggerated his "claimed limitations," observing that it was "silly" for the plaintiff to assert that he could not sit or stand for more than [five] to [ten] minutes at a time when he "acknowledged travel[ing] to Atlantic City and St. Croix with his companion."  Id. at 30.  Thus, while the ALJ acknowledged the plaintiff's "long history of lumbosacral spine muscle spasms, tenderness[,] and limited motion," as well as the "diagnostic findings of L5-S1 stenosis, with herniated nucleus pulposus at L5-S1, and bilateral L5 radiculopathy accompanied by left shoulder limitations," he concluded that the plaintiff "[did] not have an impairment or combination of impairments listed in, or medically equal to one listed in" the Administration's listing of impairments because "[the plaintiff's] description of his limitations as a result of those disorders . . . [was] not fully credible."  Id. at 35.  Further, the ALJ concluded that the plaintiff

3

"ha[d] the residual functional capacity to perform a range of unskilled work at the light exertional level within named limitations," id., and that based upon the plaintiff's age at the time of the hearing, educational background, and the testimony of the vocational expert, "there [were] a significant number of jobs in the national economy [that] he could perform," id. at 36. The ALJ therefore concluded that the plaintiff did not suffer from a "disability" as defined by the Social Security Act "at any time from June 2, 1997, through the date of [his] decision." Id.

The plaintiff appealed unsuccessfully for a review of his claim by the Administration's Appeals Council. Id. at 5. Following the rejection of his appeal, the plaintiff filed his complaint in this Court on July 8, 2002. Per the briefing schedule agreed to by the parties, the plaintiff filed his motion for judgment of reversal or remand on November 12, 2002, to which the defendant responded with his motion for motion for judgment of affirmance on December 12, 2002.[3]

In support of his motion for judgment of reversal or remand, the plaintiff argues that the ALJ erred both procedurally and factually in concluding that the plaintiff's impairments do not equal any of the Administration's listed impairments, and must be reversed. Pl.'s Mem. at 7–10. Further, the plaintiff contends that the ALJ failed to accord sufficient deference to the medical opinion of the plaintiff's treating physicians or to adequately explain why such deference was not required. Id. at 10–14. The plaintiff also asserts that the ALJ erred in relying upon the testimony of the vocational expert with respect to the types of jobs that the plaintiff was hypothetically capable of performing and erred in assessing his residual functional capacity. Id. at 14–19. Finally, the plaintiff takes issue with the ALJ's assessment of the plaintiff's credibility, which he finds "erroneous as a matter of law" and "not supported by the record as a whole." Id. at 23.

---

[3]  The parties' motions have languished on the Court's docket due to an error in the electronic recordkeeping system used by the Court, which did not advise the undersigned member of the Court of the pendency of the motion. The Court regrets any inconvenience caused to the parties by its delay in addressing their motions.

4

In response, the defendant concedes that "the ALJ failed to state which listing he considered and failed to find specifically that [the] plaintiff's condition did not meet or equal [that] listing," Def.'s Mem. at 10, but suggests that this finding is implicit in the ALJ's analysis and that substantial evidence in the record supports the ALJ's conclusions with respect to the lack of equivalency between the plaintiff's medical condition and the conditions listed by the Administration, id. at 10–12. The defendant further argues that the ALJ relied upon substantial evidence in the record in disregarding the opinions of the plaintiff's treating physicians, id. at 12–14, and that it is "beyond reasonable dispute that the vocational expert's testimony provides substantial evidence in support of the [ALJ's] determination that the plaintiff was not disabled within the meaning of the [Social Security] Act," id. at 19. The defendant also contends that there is "ample support in the medical record, a[s] well as in [the] plaintiff's own testimony," to support the ALJ's findings as to the plaintiff's credibility and his residual functional capacity. Id. at 15.

## II. Standard of Review

As noted above, both parties seek relief pursuant to 42 U.S.C. § 405(g). Under this statute, a court reviewing a benefits determination by the Administration is "confined to determining whether the [Administration's] decision . . . [was] supported by substantial evidence in the record." Brown v. Bowen, 794 F.2d 703, 705 (D.C. Cir. 1986). With respect to the Administration's factual determinations, the "substantial evidence" requirement mandates that the Administration's findings be supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citation and quotation marks omitted). The standard requires "more than a

scintilla, but [something] less than a preponderance of the evidence." Evans Fin. Corp. v. Director, Office of Workers' Comp. Programs, 161 F.3d 30, 34 (D.C. Cir. 1998).

With respect to the Administration's legal rulings, "the [district] court shall review only the question of conformity" by the Administration to its own regulations as well as "the validity of such regulations." 42 U.S.C. § 405(g) (2006). Thus, the reviewing court must uphold the Administration's legal "determination if it . . . is not tainted by an error of law." Smith v. Bowen, 826 F.2d 1120, 1121 (D.C. Cir. 1987). However, a court may only consider the grounds proffered by the agency in its decision; post hoc rationalizations will not suffice. Butler v. Barnhart, 353 F.3d 992, 1003 n.5 (D.C. Cir. 2004).

### III. Legal Analysis

Because the plaintiff, by all accounts, is neither blind nor aged, he must establish, inter alia, that he qualifies as "disabled" within the meaning of the Social Security Act to recover disability insurance benefits or supplemental security income benefits. See 42 U.S.C. § 423(a)(1)(E) (providing that a claimant must, inter alia, be "under a disability" to receive disability insurance benefits); see also id. § 1382(a)(1) (restricting eligibility for supplemental security income benefits to "[e]ach aged, blind, or disabled individual who does not have" a spouse that is eligible to receive such benefits and meets other statutory criteria); id. § 1382(a)(2) (setting forth the same threshold requirements for individuals who have an eligible spouse).[4] Although the term "disabled" refers to an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" for purposes of both disability insurance and supplemental security income benefits, 42 U.S.C. § 416(i)(1); see also

---

[4] Section 423 does not list blindness as an alternative to a disability for purposes of eligibility for disability insurance benefits; however, 42 U.S.C. § 416(i)(1) lists blindness as an alternative definition for the term "disability."

6

id. § 1382c(a)(3)(A) (same), the language used to describe the requisite severity of those impairments differs in the two statutes: § 416 provides that the impairment must be one "which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than [twelve] months," id. § 416(i)(1), whereas § 1382c provides that the impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work [that] exists in the national economy," id. § 1382c(a)(3)(B). However, the Administration has reconciled these definitions in its regulations regarding disability insurance benefits and supplemental security income benefits, defining disability "as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months" (i.e., the definition set forth in § 416), while providing that "[t]o meet this definition, [a claimant] must have a severe impairment[ or combination of impairments] that makes [the claimant] unable to do [his] past relevant work . . . or any other substantial gainful work that exists in the national economy" (i.e., the definition set forth in § 1382c). 20 C.F.R. § 404.1505 (2007); see also id. § 416.905 (same).

To evaluate whether an individual meets this combined standard for disability, the Administration engages in a five-step sequential evaluation of the claimant's disability claim. Id. § 404.1520; see also id. § 416.920(a) (same). Under this process, the claimant must first demonstrate that he is not presently engaged in "substantial gainful activity." Id. § 404.1520(a)(4)(i); see also id. § 416.920(b) (same). Second, the claimant must have a "severe" impairment, id. § 404.1520(a)(4)(ii); see also id. § 416.920(c) (same), that "specifically limits [his] . . . ability to do basic work activities," id. § 416.920(c). If the ALJ finds the impairment to

7

be severe, then he should determine whether the claimant's condition "meets or equals" an impairment listed as disabling in the regulations. Id. § 404.1520(a)(4)(iii); see also id. § 416.920(d) (same). When such a correlation cannot be found, the claimant must demonstrate his inability to perform "past relevant work." Id. § 404.1520(a)(4)(iv); see also id. § 416.920(e) (same). Once the claimant makes this showing, the burden shifts in step five to the Administration to demonstrate that the claimant can do "other work" considering his age, education, past work experience, and residual functional capacity. Id. § 404.1520(a)(v); id. § 416.920(g).

In this case, the ALJ explicitly recognized that the plaintiff satisfied the first and second requirements of the sequential evaluation process. A.R. at 25. Thus, the Court's inquiry is confined to whether the ALJ erred in steps three through five of the evaluation process. Because, as set forth in greater detail below, the ALJ erred in his consideration of the weight to accord the medical opinions of the plaintiff's treating physicians, and because that refusal underpins his conclusions at steps three through five of the sequential evaluation process, the Court must vacate the ALJ's decision from step three onward and remand this case with instructions to perform those steps of the sequential evaluation process anew.

"[A] treating physician's opinion regarding an impairment is usually binding on the fact-finder unless contradicted by substantial evidence." Williams v. Shalala, 997 F.2d 1494, 1498 (D.C. Cir. 1993) (internal citation and quotation marks omitted). This principle, known as the "treating physician" rule, is the product of both case law, see Poulin v. Bowen, 817 F.2d 865, 873 (D.C. Cir. 1987) ("Because a claimant's treating physicians have great familiarity with his condition, their reports must be accorded substantial weight."), and agency regulation, see 20 C.F.R. § 404.1527(d)(2) (2006) ("If we find that a treating source's opinion on the issue(s) of the

nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."). Under this rule, "an ALJ who rejects the opinion of a treating physician must explain his reasons for doing so." Williams, 997 F.2d at 1498. "Failure to do so is reversible error," Jackson v. Barnhart, 271 F. Supp. 2d 30, 35 (D.D.C. 2002), as is the failure to observe the rule itself, see Hodge v. Bowen, 715 F. Supp. 5, 7 (D.D.C. 1989) (finding the ALJ's "refusal to apply the treating physician's rule and afford special weight to [the plaintiff's treating physician's] opinion to be reversible error").

In this case, the ALJ purported to explain why he disregarded the opinions of the plaintiff's treating physicians; however, his explanations are far from satisfactory. First, the ALJ reasoned that the plaintiff's treating physicians, in concluding that the plaintiff was unfit for employment and totally disabled, "addressed a core administrative finding, . . . which is the sole province of the Commissioner of Social Security (and by delegation [the] [ALJ])." A.R. at 31. The Court agrees that the plaintiff's treating physicians are not entitled to deference insofar as they comment on the ultimate question of disability to be decided by the Administration. See Hartline v. Astrue, 605 F. Supp. 2d 194, 209 (D.D.C. 2009) (affirming ALJ's rejections of conclusions by treating physicians "regarding [the p]laintiff's ability or inability to work"); see also 20 C.F.R. § 404.1527(e)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); id. § 416.927(e)(1) (same). But that does not mean that the ALJ is also free to totally ignore the medical conclusions reached by the plaintiff's treating physicians.

Moreover, it is clear from the ALJ's own summation of the evidence that such conclusions were made by those physicians. For example, as summarized by the ALJ in his

9

memorandum opinion, Dr. Azer, one of the plaintiff's two treating physicians, concluded that the plaintiff "could not perform any activities that involved bending, stooping, kneeling, pushing, pulling, and lifting any heavy objects, prolonged standing[,] and work at unprotected heights," and "could not perform in a position offered to the [plaintiff] which involved prolonged sitting because it aggravated his symptoms." A.R. at 27. The plaintiff's other treating physician, Dr. Jackson, opined that "the [plaintiff] had muscle spasms in his lower back with <u>severe restricted motion</u> . . . and[, <u>inter alia</u>,] obvious muscle weakness in the lower back." Id. at 28 (emphasis added). Yet, the ALJ concluded only that the plaintiff "should avoid <u>excessive</u> standing or walking," and that "he was not shown to have limited ranges of . . . motion" in his "neck, dominant right upper extremity[,] or lower extremities," or limitations on his "ability to engage in <u>all</u> work activity given the option to sit or stand to suit his comfort." Id. at 31 (emphasis added). This conclusion would at least appear to be markedly different from the conclusions reached by the physicians who best understood the plaintiff's condition.

      The ALJ also found that the conclusions reached by the plaintiff's treating physicians were flawed because they "appear[ed] to be [based mostly] on subjective complaints rather than objective findings." Id. Interpreting this conclusion in the manner most favorable to the defendant, one could conceivably infer that the ALJ concluded that the opinions rendered by the plaintiff's treating physicians were not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" as required for the opinions to have controlling authority under 20 C.F.R. § 404.1527(d)(2) and 20 C.F.R. § 416.927(d)(2). The ALJ did not, however, even mention the sufficiency of the "clinical and laboratory diagnostic techniques" employed by the plaintiff's treating physicians, let alone establish that those "techniques" were in some way defective. And even if the ALJ had made such a finding, and even if that finding was correct,

10

that would mean only that the treating physician's opinions would not automatically be deemed controlling, not that those opinions would be entitled to no consideration whatsoever.

To the contrary, §§ 404.1527 and 416.927 expressly provide that where "the treating source's opinion" is not given "controlling weight," the ALJ should consider the "[l]ength of the treatment relationship and the frequency of examination," id. § 404.1527(d)(2)(i); see also id. § 416.927(d)(2)(i) (same), along with the "[n]ature and extent of the treatment relationship," id. § 404.1527(d)(2)(ii); see also id. § 416.927(d)(2)(ii) (same), in determining the weight to give to a claimant's treating physician. "Generally, the longer a treating source has treated [a claimant] and the more times [a claimant] ha[s] been seen by a treating source, the more weight [the ALJ] will give to the source's medical opinion," id. § 404.1527(d)(2)(i); see also id. § 416.927(d)(2)(i) (same), and "the more knowledge a treating source has about [the claimant's] impairment(s)[,] the more weight [the ALJ] will give to the source's medical opinion," id. § 404.1527(d)(2)(ii); see also id. § 416.927(d)(2)(ii) (same). The ALJ in this case did not perform such an analysis; had he done so, he might not have disregarded the opinions of the plaintiff's treating physicians so easily given the duration of the plaintiff's relationship with his treating physicians (almost nine years at the time of the plaintiff's hearing, A.R. at 26) and the frequency of contact between them, see id. at 124–88 (reflecting over 135 consultations by the plaintiff with his treating physicians over the course of those nine years).

Finally, the Administration argues that the medical opinions of the plaintiff's treating physicians were "contradicted by the objective evidence in the record and other evidence, including [the] plaintiff's testimony." Def.'s Mem. at 12–13. But the ALJ did not reject the physicians' opinions on these grounds, see discussion supra, and "a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make,

11

must judge the propriety of such action solely by the grounds invoked by the agency," not on the basis of arguments asserted for the first time on appeal, SEC v. Chenery Corp., 332 U.S. 194, 196 (1947).  And, if anything, the ALJ should have considered the treating physicians' assessments as to the level of discomfort suffered by the plaintiff in evaluating the creditworthiness of the plaintiff's testimony regarding the severity of his pain, not simply ignored those opinions based on the lack of objective evidence to support the physicians' assessments and his own belief that the plaintiff is prone to exaggeration.  After all, the treating physician rule exists because "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)[,] and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations." 20 C.F.R. § 404.1527(d)(2); see also id. § 416.927(d)(2) (same).

     Because the ALJ did not demonstrate that the treating physician rule does not apply in this case or weigh the opinions of the plaintiff's treating physicians in accordance with the Administration's regulations, the Court must reverse and remand this case to the Administration with instructions to perform steps three through five of the sequential evaluation process anew. In reevaluating whether the plaintiff has an impairment or combination of impairments equal to a listed impairment or a residual functioning capacity that would permit him to work in the national economy, the ALJ must consider whether the opinions of the plaintiff's treating physicians should be given controlling weight and, if not, how much weight should be accorded to those opinions using the framework set forth in 20 C.F.R. § 404.1527 and 20 C.F.R. § 416.927.  The Court will therefore grant the plaintiff's motion for judgment of reversal insofar

as the plaintiff requests such relief and deny the defendant's motion for judgment of affirmance for the same reasons.[5]

### IV. Conclusion

"[A]n ALJ cannot merely disregard evidence which does not support his conclusion." Hartline v. Astrue, 605 F. Supp. 2d 194, 203 (D.D.C. 2009). Here, the ALJ committed reversible error in failing to explain in a satisfactory manner why he did not abide by the treating physician rule and by failing to adhere to the Administration's regulations in determining the weight to be given to those opinions. The Court must therefore grant the plaintiff's motion for judgment of reversal or remand in part, deny the defendant's motion for judgment of affirmance, and remand this case to the Administration for a new determination by the ALJ as to the third through fifth steps of the sequential evaluation process.

---

[5] Because the Court concludes that, upon remand, the ALJ must perform the third through fifth steps of the sequential evaluation process again in conformance with the instructions set forth above, the Court need not consider the thorny issue of whether the ALJ's conceded failure to perform the listing comparison required at step three of the process constitutes reversible error, see Conway ex rel. Tolen v. Astrue, 554 F. Supp. 2d 26, 35 (D.D.C. 2008) ("When the evidence in the administrative record clearly generates an issue as to a particular listing and the ALJ fails to properly identify the [l]isting considered and to explain clearly the medical evidence of record supporting the conclusion reached[,] a remand can be expected to result." (internal citation and quotation marks omitted)); Davis v. Shalala, 862 F. Supp. 1, 5–7 (D.D.C. 1994) (remanding case with instructions to the ALJ to "carefully articulate[] the basis for any determination as to the [p]laintiff's degree of disability" where the ALJ "fail[ed] to address and explain the sufficiency of the evidence with respect to whether the [p]laintiff's impairments, singularly or in combination, [met] or equal[led] a [l]isting"), or instead is only harmless error, see Fischer-Ross v. Barnhart, 431 F.3d 729, 733–34 (10th Cir. 2005) (affirming denial of plaintiff's claims notwithstanding failure of ALJ to explicitly perform listing comparison under the harmless error rule "where, based on material the ALJ did at least consider (just not properly), [the court] could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way" (internal citation and quotation marks omitted)); Rice v. Barnhart, 384 F.3d 363, 369–70 (7th Cir. 2004) (affirming denial of disability insurance benefits claim despite ALJ's failure to mention the applicable listing for purposes of comparison where evidence in the record "reveal[ed] that [the plaintiff] did not meet all of the criteria of [that listing], as required" (emphasis in original)); Jones v. Barnhart, 364 F.3d 501, 504–05 (3d Cir. 2004) (holding that an ALJ need not "use particular language or adhere to a particular format in conducting" a step three analysis so long as he "ensure[s] that there is sufficient development of the record and explanation of findings to permit meaningful review"). Similarly, the plaintiff's arguments regarding the sufficiency of the ALJ's analysis with respect to the plaintiff's residual functional capacity and his arguments regarding the merits of the ALJ's determination of the plaintiff's credibility are moot because the ALJ will need to reevaluate these issues anyway in light of the new factual findings that must be made regarding the validity of the opinions of the plaintiff's treating physicians.

**SO ORDERED** this 30th day of July, 2009.[6]

REGGIE B. WALTON
United States District Judge

---

[6] An order will be entered contemporaneously with this memorandum opinion (1) granting in part the plaintiff's motion for judgment of reversal or remand, (2) denying the defendant's motion for judgment of affirmance, (3) reversing the determination of the Administration that the plaintiff is ineligible for disability insurance benefits and supplemental social security income benefits commencing June 2, 1997, (4) remanding this case to the Administration for further proceedings consistent with this memorandum opinion, and (5) closing the docket for this case.